UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| RACHEL M. WEST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:19-CV-435-DCLC-HBG |
| | ) |
| ANDREW M. SAUL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 15 & 16], as well as the Commissioner's Motion for Summary Judgment and Memorandum in Support [Docs. 17 & 18]. Plaintiff Rachel M. West seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner"). For the reasons that follow, the Court will **RECOMMEND** that Plaintiff's Motion for Summary Judgment [Doc. 15] be **DENIED** and the Commissioner's Motion for Summary Judgment [Doc. 17] be **GRANTED**.

**I.    PROCEDURAL HISTORY**

On December 17, 2015, Plaintiff filed an application for supplemental security income pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, alleging disability beginning on May 8, 2010. [Tr. 15, 61, 177–79]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 94]. A hearing was held on June 4, 2018. [Tr. 32–60]. On October 1, 2018, the ALJ found that Plaintiff was not disabled.

[Tr. 15–26]. The Appeals Council denied Plaintiff's request for review on September 16, 2019 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on November 1, 2019, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since December 17, 2015, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: post-traumatic osteoarthritis of the left ankle, bilateral knee osteoarthritis, depressive disorder and borderline intellectual functioning (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except the claimant can stand for six hours; walk for five hours and sit for eight hours. She should have no more than occasional climbing and frequent balancing, stooping, kneeling, crouching and crawling. She should have no more than occasional hazards and no more than frequent vibration. She is further limited to simple and low-level 1-3 step tasks. She should have no more than occasional contact with coworkers, supervisors and the public and changes should be introduced gradually and infrequently.
>
> 5. The claimant has no past relevant work (20 CFR 416.965).
>
> 6. The claimant was born on October 10, 1990 and was 25 years old, which is defined as a younger individual age 18-49, on the date

2

the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 17, 2015, the date the application was filed (20 CFR 416.920(f)).

[Tr. 17–25].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the

3

case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to

4

last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence in several regards. First, Plaintiff maintains that the ALJ failed to afford proper weight to the opinion of her examining psychologist, Larry F. Brown, Ph.D. [Doc. 16 at 8–10]. Next, Plaintiff claims that the ALJ misstated her testimony related to playing video games and that the ALJ's conclusions on this topic are not supported by the record [*Id.* at 10–11]. Plaintiff then contends that the ALJ arbitrarily ignored or rejected the lay witness testimony from her aunt, Joanne Owens.

5

[*Id.* at 11–12]. Plaintiff also asserts that the ALJ improperly relied upon his own medical opinion in reviewing her ability to have a driver's license. [*Id.* at 12–13]. Lastly, Plaintiff claims that the ALJ's decision misstates and fails to consider all relevant medical evidence of her cognitive impairments in violation of 20 CFR § 416.920a, while challenging the ALJ's determination regarding Listing 12.05. [*Id.* at 13–15].

### A. ALJ's Treatment of the Medical Opinions

Plaintiff first claims that the ALJ erred in affording little weight to Dr. Brown's opinion, as "the ALJ cited no medical records that would contradict the examining doctor's opinion or that would support only moderate limitations in all four areas of functioning." [*Id.* at 9–10]. Further, Plaintiff asserts that "[t]he ALJ's reliance upon the opinions of the non-examining state agency doctors for his findings is not substantive evidence in general." [*Id.* at 10].

The Commissioner responds that the ALJ properly evaluated Dr. Brown's opinion, as "the ALJ explained in detail that Dr. Brown's opinion was inconsistent with other substantial evidence in the record and appropriately gave it only partial weight." [Doc. 18 at 12]. Additionally, the Commissioner states that "[s]ince the relevant period in this case is from December 17, 2015 through October 1, 2018, this Court must only consider Dr. Brown's medical opinion dated November 4, 2016." [*Id.*].

Plaintiff was first examined by Dr. Brown on March 19, 2015 and was diagnosed with unspecified anxiety disorder and borderline intellectual functioning. [Tr. 399–402]. However, in the pertinent opinion, Dr. Brown also conducted a psychological evaluation on November 4, 2016, performing a clinical interview and mental status evaluation, as well as reviewing provided records. [Tr. 409–12]. Dr. Brown noted that during the mental status evaluation, Plaintiff's eye contact was poor; she was oriented to time, place, person and situation; but that her intelligence

6

appeared to be low, as she could not calculate serial 5's or name a recent news event. [Tr. 410]. Additionally, Dr. Brown detailed that Plaintiff's insight was fair, there was no sign of disorganized or illogical thinking, that her judgment and impulse control seemed to be intact, as well as that she seemed to be in some psychological distress, appearing depressed and anxious. [*Id.*]. Dr. Brown then reviewed Plaintiff's reported symptoms and activities of daily living. [Tr. 410–11].

In summary, Dr. Brown noted that Plaintiff had been evaluated several times recently, including by him a year ago, but "[a]pparently at that time, she was not as elaborate or convincing in her reports of social anxiety," as "[t]oday she does look anxious." [Tr. 411]. Dr. Brown detailed that Plaintiff reported a history consistent with social anxiety, as she "has become something of a recluse," and "[i]t does appear that her discomfort about being around people interferes with her functioning, and would compromise her ability to hold a job." [*Id.*]. Therefore, Dr. Brown diagnosed social phobia and borderline intellectual functioning. [*Id.*]. Lastly, Dr. Brown assessed that Plaintiff was moderately to markedly limited in the ability to understand and remember directions; moderately limited in her concentration; markedly limited in social interaction; and markedly limited in adaption. [Tr. 412].

In the disability decision, the ALJ reviewed Dr. Brown's opinion and afforded it partial weight, "as his opinions are somewhat consistent with the medical evidence of record." [Tr. 23]. The ALJ stated that great weight was given to Dr. Brown's assessment that Plaintiff has moderate limitations in concentration, as well as "Dr. Brown's 2016 consultative examination that [Plaintiff] has moderate limitations in the four domain areas of mental functioning, as this opinion is also consistent with the medical evidence of record." [Tr. 24].

However, the ALJ afforded little weight to Dr. Brown's opinion that Plaintiff has marked limitations in social interaction, adaption, and the ability to understand and remember directions.

7

The ALJ reviewed that Plaintiff received a special education diploma in high school, in addition to her testimony that she has problems adding. Conversely, the ALJ noted that Plaintiff lives independently, socializes with family, and that Dr. Brown detailed that she has one friend with whom she socializes. The ALJ found that "[t]hese activities are inconsistent with Dr. Brown's assessed marked limitations in social functioning." [*Id.*]. Additionally, the ALJ reviewed that Plaintiff reported that she watches television and plays videogames, and that "playing video games requires the ability to be responsive to instructions to navigate through the complexities of each level in order to achieve a specific goal and win the game." [*Id.*].

Opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). An ALJ is only required to provide good reason for explaining the weight assigned to the opinion of a "treating source." 20 C.F.R. § 416.927(c)(2); *see Perry v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 426 (6th Cir. 2012) ("An ALJ need not 'give good reasons' for the weight he assigns opinions from physicians who, like Dr. Pickering, have examined but not treated a claimant.").

Plaintiff challenges the ALJ's assignment of partial weight to Dr. Brown's opinion. In particular, Plaintiff challenges the ALJ's alleged failure to cite any medical records that would contradict Dr. Brown's opinion, "or that would support only moderate limitations in all four areas of functioning." [Doc. 16 at 10]. Therefore, the question before the Court is whether the ALJ

8

Case 3:19-cv-00435-DCLC-HBG   Document 19   Filed 02/04/21   Page 8 of 19
PageID #: 718

improperly afforded little weight to Dr. Brown's opinion that Plaintiff had marked limitations in social interaction, adaption and the ability to understand and remember directions, largely due to her activities of daily living.

"Although the RFC must be supported by evidence of record, it need not correspond to, or even be based on any specific medical opinion." *Simon v. Comm'r of Soc. Sec.*, No. 2:16-CV-259, 2017 WL 1017733, at *6 (S.D. Ohio Mar. 16, 2017) (citing *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015)), *report and recommendation adopted by*, 2017 WL 3172717 (S.D. Ohio July 25, 2017). An ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering the RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). "The Sixth Circuit has repeatedly upheld ALJ decisions where the ALJ rejected medical opinion testimony and determined RFC based on objective medical evidence and non-medical evidence." *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (internal citations omitted).

On the other hand, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (citation and internal quotation marks omitted). "[C]ourts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data." *Allen v. Comm'r of Soc. Sec.*, No. 12-15097, 2013 WL 5676254, at *15 (E.D. Mich. Sept. 13, 2013), *report and recommendation adopted by*, 2013 WL 5676251 (E.D. Mich. Oct. 18, 2013) (collecting cases).

First, the Court acknowledges that the ALJ afforded great weight to the opinions of the nonexamining state agency mental consultants, who "surmised that [Plaintiff] had moderate limitations in the four areas of mental functioning and agreed that even with the claimant's mental

9

symptoms she would be able to understand and remember simple instructions, would be able to cooperate and be socially appropriate." [Tr. 23]; *cf. Sweeney v. Colvin*, No. 2:15-CV-202, 2016 WL 3408950, at *10 (E.D. Tenn. June 1, 2016) ("This is not a case of an ALJ giving greater weight to a non-examining state agency doctor or psychologist than to the opinion of other doctors or psychologists who did treat or examine the plaintiff."), *report and recommendation adopted by*, 2016 WL 3449873 (E.D. Tenn. June 20, 2016).

In *Sweeney v. Colvin*, this Court concluded that the ALJ erred by finding that the plaintiff did not suffer from any severe mental or physical impairments, as he afforded little weight to the medical opinions of record and improperly "chang[ed] 'moderate' to 'mild' [mental and physical limitations] across the board, and finding a person with a pinched nerve in her neck to have no physical limitations, with *no other professional opinion to support him and all of the professional opinions holding to the contrary*. 2016 WL 3408950 at *10 (emphasis in original). However, the Court in *Sweeney* also addressed that "[i]f this were a question of the ALJ crediting the opinion of one physician or psychologist over another, it would be a different situation," as "[t]hat is certainly his prerogative as finder of fact." *Id.*

Here, at the initial level of the agency's review, George Davis, Ph.D. noted on April 20, 2016, that although Plaintiff suffered from affective disorders and anxiety disorders, a "current MSE by an acceptable medical source is needed to assess the severity of the claimant's alleged mental impairments." [Tr. 66]. However, at the reconsideration level, after reviewing additional medical records and Dr. Brown's opinion, Theodore Weber, M. Div., Psy.D., assessed Plaintiff's mental residual functional capacity on November 23, 2016. [Tr. 80].

Dr. Weber reviewed Plaintiff's understanding and memory limitations, finding that she was not significantly limited in the ability to remember locations and work-like procedures or

10

understand and remember very short and simple instructions; but that she was moderately limited in the ability to understand and remember detailed instructions. [Tr. 81]. When reviewing Plaintiff's sustained concentration and persistence limitations, Dr. Weber assessed that Plaintiff was not significantly limited in her ability to carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual; sustain an ordinary routine without special supervision; and make simple work-related decisions. [*Id.*]. However, he opined that Plaintiff was moderately limited in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, as well as the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace. [*Id.*].

When reviewing Plaintiff's social interaction limitations, Dr. Weber found that Plaintiff was not significantly limited in the ability to interact appropriately with the general public, ask simple questions or request assistance, or maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. [Tr. 82]. Conversely, he found that Plaintiff was moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisions and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. [*Id.*]. Lastly, when reviewing Plaintiff's adaption limitations, Dr. Weber assessed that Plaintiff was not significantly limited in the ability to be aware of normal hazards and take appropriate precautions, as well as the ability to travel in unfamiliar places; however, he found that she was moderately limited in the ability to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. [*Id.*].

11

Therefore, Dr. Weber opined that Plaintiff would be able to understand and remember simple instructions, but she would have difficulties with more detailed instructions; she would be able to complete simple tasks/work procedures and make work decisions, but she would have difficulties with maintaining attention and concentration for extended periods and would have difficulties carrying out detailed instructions, as well as that she would be able to cooperate and be socially appropriate but would have difficulties accepting criticism from supervisors; and that she would have some difficulty reaching/adapting appropriately to the work environment and would have some difficulties setting realistic goals, but overall she was capable of completing simple tasks on a regular basis from a mental standpoint. [Tr. 82–83].

"State agency medical consultants . . . are 'highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *2 (July 2, 1996)). Therefore, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6p, 1996 WL 374180, at *3. "One such circumstance . . . [is] when the 'State agency medical . . . consultant's opinion is based on review of a complete case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting SSR 96–6p, 1996 WL 374180, at *3).

As stated above, the ALJ afforded great weight to Dr. Weber's opinion, finding that it was mostly consistent with the medical evidence of record. [Tr. 23]. In particular, the ALJ reviewed that Plaintiff was independent in her personal care needs, but sometimes needed reminders to take medications and attend to her personal grooming and household tasks, as well as that she was able

12

to prepare simple meals, drive, play video games daily, and interact with friends and family. [*Id.*]. Plaintiff largely does not contest the weight afforded to the opinion of the nonexamining state agency consultant, other than raising the same arguments for the little weight afforded to portions of Dr. Brown's opinion.

However, the ALJ did not completely exclude Dr. Brown's opinion, finding that it was entitled to partial weight. Additionally, the ALJ afforded great weight to Dr. Weber's opinion which was consistent with the mental limitations assessed in the RFC determination. *Cf. Canfield v. Colvin*, No. 3:12-0050, 2017 WL 816824, at *11–12 (M.D. Tenn. Mar. 1, 2017) ("The ALJ in the instant case was entitled to reject the only opinion in the record that addressed Plaintiff's mental condition, the MSS completed by Dr. Pate. However, the Court finds that it was improper for the ALJ to make his own medical findings with respect to Plaintiff's mental limitations without the benefit of any medical opinion, and notes that this conclusion finds significant support from other district courts in this circuit."), *report and recommendation adopted sub nom.*, *Canfield v. Soc. Sec. Admin.*, 2017 WL 1066651 (M.D. Tenn. Mar. 21, 2017).

With respect to the portions of Dr. Brown's opinion finding marked limitations, the ALJ reviewed how these assessed limitations were inconsistent with the medical record; chiefly, Plaintiff's activities of daily living. "Generally, the more consistent a medical opinion is with the record as a whole, the more weight [will be given] to that medical opinion." 20 C.F.R. § 404.1527(c)(4). Here, it was appropriate for the ALJ to discount Dr. Brown's opinion that Plaintiff had marked limitations in social interaction, adaption, and the ability to understand and remember directions, as he identified how the assessed limitations were inconsistent with Plaintiff's ability to live independently, socialize with family and friends, drive, and watch television and play video games. While Plaintiff claims that "the ALJ cited no medical records that would contradict" Dr.

13

Brown's opinion "or that would support only moderate limitations in all four areas functioning," as detailed above, the ALJ previously found that Dr. Weber's opinion was entitled to great weight. [Doc. 16 at 10]. Additionally, Plaintiff's contention that "[t]he ALJ's reliance upon the opinions of the non-examining state agency doctors for his findings is not substantial evidence" is unsupported by applicable case law and regulations. [*Id.*].

Plaintiff claims that the ALJ misstated her testimony regarding playing video games, asserting that with his statement that playing video games requires the ability to be responsive to instructions, "the ALJ makes an assumption about what types of video games [Plaintiff] plays and the difficulty of those games." [*Id.* at 11]. The Court notes that this rationale regarding the effect of playing video games has been upheld by certain courts and denied by others. *See, e.g.*, *Rogers v. Comm'r of Soc. Sec.*, No. 5:18-CV-01341-JHE, 2020 WL 1285847, at *7 (N.D. Ala. Mar. 16, 2020); *Power v. Comm'r of Soc. Sec.*, No. 1:16-CV-425-SKL, 2018 WL 563836, at *8 (E.D. Tenn. Jan. 25, 2018) (finding substantial support in the record for the ALJ's finding that Plaintiff has only moderate limitations in social functioning where "[t]he ALJ also specifically discussed how Plaintiff's admitted ability to play video games supports a finding of only moderate limitations in concentration, persistence and pace, because 'playing video games requires the ability to be responsive to instructions in order to navigate . . . each level in order to achieve a specific goal,' and because Plaintiff 'did not mention any problems in following the plot or directions of the video game'"); *but see Roscioli v. Saul*, No. 19-CV-03894-VKD, 2020 WL 6940937, at *7 (N.D. Cal. Nov. 25, 2020) ("In the present matter, there is no evidence regarding Mr. Roscioli's skill level, or how much time he actually spends playing video games each day. Thus, it is not evident that the fact that Mr. Roscioli plays video games, by itself, contradicts his testimony or that any skills that may be involved are transferable to a work setting."); *Murray v. Berryhill*, No. 5:17-CV-373-

14

CLS, 2017 WL 4865546, at *3 (N.D. Ala. Oct. 27, 2017) ("Sporadic gaming or crafting activities might not be inconsistent with claimant's complaints."). However, the Court finds that the ALJ did not base his decision to afford little weight to the portion of Dr. Brown's opinion solely on Plaintiff's ability to play video games.

Further, the Court does not find that the ALJ inaccurately summarized the medical record when detailing how Plaintiff's daily activities were inconsistent with portions of Dr. Brown's opinion. Plaintiff asserts that the ALJ arbitrarily ignored her aunt's testimony that Plaintiff socializes with the children during family gatherings and only shops in a small store with approximately six employees when there are fewer people present in the store. [Doc. 16 at 11]. However, the Commissioner correctly states that the Sixth Circuit has previously upheld an ALJ decision discounting the evidence of a claimant's family member "on the basis that it conflicted with other substantial evidence in the record." *Gustafson v. Comm'r of Soc. Sec.*, 550 F. App'x 288, 289 (6th Cir. 2014). Here, the ALJ did not ignore Ms. Owens' testimony, but found that it was inconsistent with Plaintiff reporting that she prepares simple meals once or twice a month, performs household chores and does laundry, as well as treatment notes indicating that Plaintiff has a driver's license and drives herself independently to medical appointments. [Tr. 18].

Next, Plaintiff argues that the ALJ "improperly relied on his own lay medical opinion," stating that the ALJ failed to properly depict her ability to drive, such as that he did not state that Plaintiff had to take the reading test three times to get her learner's permit, as well as her testimony that she does not drive on a regular basis. *See* [Doc. 16 at 12]. However, the ALJ largely based his reasoning on Plaintiff's ability to obtain a driver's license. Additionally, the Commissioner cites to a February 17, 2016 treatment note wherein Plaintiff reported that "she is the driver in the home, and [her] grandmother constantly pressures her to drive her around." [Tr. 527]. Therefore,

15

the Court finds that the ALJ did not improperly rely upon his own lay medical opinion when describing Plaintiff's ability to drive.

Ultimately, although Plaintiff cites evidence purportedly inconsistent with the ALJ's cited rationales for assigning little weight to part of Dr. Brown's opinion, she has not shown that the ALJ's conclusion was outside the ALJ's permissible "zone of choice" that grants the ALJ discretion to make findings without "interference by courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). The Commissioner has also provided contrasting citations to the record regarding Plaintiff's ability live independently. *See* [Doc. 18 at 15].

While an ALJ is required to consider every medical opinion in the record, 20 C.F.R. § 404.1527(c), he is not bound to adopt any particular opinion when formulating a claimant's RFC. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). The ALJ is responsible for weighing medical opinions, as well as resolving conflicts in the medical evidence of record. *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *see also* 20 C.F.R. § 416.946(c) (stating the final responsibility for assessing a claimant's RFC rests with the ALJ). Additionally, the ALJ is only required to include limitations that he finds credible in the RFC determination. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155–56 (6th Cir. 2009). The Court finds that the ALJ has appropriately considered the medical opinions of record and that the ALJ's RFC determination is supported by substantial evidence. Accordingly, Plaintiff's assignments of error do not constitute a basis for remand.

### B.     Listing 12.05

Plaintiff asserts that the ALJ's decision "misstates and fails to consider all relevant medical evidence of [her] cognitive impairments in violation of 20 C.F.R. § 416.920a." [Doc. 16 at 13]. Plaintiff asserts that "the record evidence" of her cognitive impairments establishes that she meets

16

Case 3:19-cv-00435-DCLC-HBG   Document 19   Filed 02/04/21   Page 16 of 19
PageID #: 726

the first and third elements of Listing 12.05, as well as "mental evidence supporting significant deficits in adaptive functioning resulting in marked limitations in at least two areas of mental functioning." [*Id.*].

At Step Three of the sequential evaluation process, a claimant will be found disabled if his impairment meets or equals one of the listings because they "describe conditions 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 433 (6th Cir. 2016) (quoting 20 C.F.R. § 416.925(a)). Each listing, including Listing 12.05, "describes an impairment in terms of its medical criteria—its signs, symptoms, and diagnostic indicators." *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). Plaintiff bears the burden of proving every element of a listing. *Id.*; *see, e.g.*, *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). "Because satisfying the listings during the third step yields an automatic determination of disability based on medical findings, rather than a judgment based on all relevant factors for an individual claimant, the evidentiary standards for a presumptive disability under the listings are more strenuous than for claims that proceed through the entire five-step evaluation." *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014) (citing 20 C.F.R. §§ 416.925(d), 416.926; *Sullivan*, 493 U.S. at 532).

Both parties have identified the applicable Listing at the time of the ALJ's decision as requiring:

1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning
    a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
    b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on

17

> an individually administered standardized test of general intelligence; and
>
> 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>    a. Understand, remember, or apply information; or
>    b. Interact with others; or
>    c. Concentrate, persist, or maintain pace; or
>    d. Adapt and manage oneself; and
>
> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.[1] Accordingly, to qualify as disabled under Listing 12.05, Plaintiff must establish the three listed requirements. *Accord Golden v. Comm'r of Soc. Sec.*, 591 F. App'x 505, 506 (6th Cir. 2015) (stating "[claimant's] IQ scores on their own fail to establish that her intellectual functioning was significantly subaverage"); *Foster v. Halter*, 279 F.3d 348, 354–55 (6th Cir. 2001).

In the disability decision, the ALJ found that the second prong of Listing 12.05B was not satisfied because Plaintiff "does not demonstrate extreme deficits in one or marked limitations in the four areas of mental functioning." [Tr. 20]. The ALJ found that Plaintiff had only a moderate limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentration, persistence, or maintaining pace; and a moderate limitation in adaption. [Tr. 18].

Plaintiff claims that Dr. Brown's opinion and her "longitudinal mental health records" establish that she meets the second prong of Listing 12.05, and thus establishes that she met the

---

[1] The regulation for Listing 12.05 has been updated since this case began. *See* 81 Fed. Reg. 66, 138-01 (Sept. 26, 2016). The current version of Listing 12.05 now has only two paragraphs, A and B. *See Jones v. Comm'r of Soc. Sec.*, No. 1:16-cv-68-SKL, 2017 WL 5015526, at *3 n.1 (E.D. Tenn. Aug. 22, 2017).

18

Listing. [Doc. 16 at 14]. The Court, however, has found that the ALJ's treatment of Dr. Brown's opinion was supported by substantial evidence, and that the ALJ was not required to adopt the portions of his opinion regarding the assessed marked limitations. Plaintiff fails to make any additional arguments regarding the ALJ's step three decision. Additionally, the Court finds that the ALJ cited substantial evidence to support his finding that Plaintiff did not have more than moderate limitations in any of the "paragraph B" criteria. [Tr. 18]. Therefore, the Court finds that Plaintiff has failed to establish that she meets every requirement of Listing 12.05. *See, e.g.*, *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

## VI. CONCLUSION

Based on the foregoing, the Court **RECOMMENDS**[2] that Plaintiff's Motion for Summary Judgment [**Doc. 15**] be **DENIED** and the Commissioner's Motion for Summary Judgment [**Doc. 17**] be **GRANTED**.

Respectfully Submitted,

Bruce Guyton
United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).